**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF
AMERICA,
            *Plaintiff-Appellant*,

            and

WALKER RIVER PAIUTE
TRIBE,
            *Intervenor-Plaintiff*,

            v.

WALKER RIVER IRRIGATION
DISTRICT; ESTATE OF
HERBERT GARMS, et al.;
CIRCLE BAR N RANCH,
L.L.C., et al.; E.L.W.
RANCHES, INC.; TRI-STATE
MOTOR TRANSIT COMPANY;
DESERT PEARL FARMS, GP,
et al.; DOUGLAS COUNTY,
NEVADA; JOHN A. MATHIAS,
ET AL.; BREAK-A-HEART,
LLC, et al.; BENTLY FAMILY
LTD. PARTNERSHIP, et al.;
HAWTHORNE UTILITIES, et
al.; NEVADA BIGHORNS
UNLIMITED; DAVID J. &
PAMELA A. PERI FAMILY

No. 15-16478

D.C. No.
CV 73-0127 RCJ
Subproceeding: C-125-B

TRUST AGREEMENT, et al.; NATIONAL FISH AND WILDLIFE FOUNDATION; DWIGHT CRAIG DONOVAN; YERINGTON VENTURES, LLC; DARLA CLARKE PERRY, et al.; ANNETTE R. SWAINSTON, et al.; RESIDUAL TRUST OF THE HEIMAN FAMILY TRUST, et al.; VGR LIMITED PARTNERSHIP; MOTLEY LIVING TRUST DATED 12-23-70; BORDA FAMILY LP; THEODORE DAVID HAIGHT; LELAND D. HAYDEN, et al.; MARJORIE L. URREA, et al.; FRED FULSTONE, JR.; NEVADA STATE OF, et al.; GREGORY B. ADAMS, et al.; ARLENE M. HOFERER, et al.; CALIFORNIA DEPARTMENT OF FISH & GAME, et al.; NORMAN W. AND KELLI J. ANNETT FAMILY TRUST, et al.; ANTLER PEAK GOLD INC.; MICHAEL J. CHILTON; COUNTY OF MONO, CALIFORNIA, et al.; SMITH VALLEY FIRE PROTECTION DISTRICT, et al.; KYLE A. RUF; SHANE BRANDON; BOREALIS MINING CO.;

J & S ROBERTS TRUST DATED 2-26-96; SUELLEN FULSTONE, et al.; MINERAL COUNTY; CENTENNIAL LIVESTOCK; U.S. BOARD OF WATER COMMISSIONERS; FENILI FAMILY TRUST, c/o Peter Fenili and Veronica Fenili, Trustees; SIX-N-RANCH, INC., c/o Richard and Cynthia Nuti; MICHAEL NUTI; NANCY NUTI; RALPH E. NUTI; MARY E. NUTI; LAWRENCE M. NUTI; LESLIE NUTI; MICA FARMS, LLC, c/o Mike Faretto; JOHN AND LURA WEAVER FAMILY TRUST, c/o Lura Weaver, Trustee; SMITH VALLEY GARAGE, INC., c/o Dan Smith and Shawna Smith; DONALD GIORGI; LORIE MCMAHON; MERLE MCMAHON; LYON COUNTY,
*Defendants-Appellees.*

UNITED STATES OF
AMERICA,
                    *Plaintiff*,

            and

WALKER RIVER PAIUTE
TRIBE,
            *Intervenor-Plaintiff-
                    Appellant*,

            v.

WALKER RIVER IRRIGATION
DISTRICT; ESTATE OF
HERBERT GARMS, et al.;
CIRCLE BAR N RANCH,
L.L.C., et al.; E.L.W.
RANCHES, INC.; TRI-STATE
MOTOR TRANSIT COMPANY;
DESERT PEARL FARMS, GP,
et al.; DOUGLAS COUNTY,
NEVADA; JOHN A. MATHIAS,
et al.; BREAK-A-HEART,
LLC, et al.; BENTLY FAMILY
LTD. PARTNERSHIP, et al.;
HAWTHORNE UTILITIES, et
al.; NEVADA BIGHORNS
UNLIMITED; DAVID J. &
PAMELA A. PERI FAMILY
TRUST AGREEMENT, et al.;
NATIONAL FISH AND
WILDLIFE FOUNDATION;

No. 15-16479

D.C. No.
CV 73-00127 RCJ
Subproceeding: C-125-B


OPINION

DWIGHT CRAIG DONOVAN; YERINGTON VENTURES, LLC; DARLA CLARKE PERRY, et al.; ANNETTE R. SWAINSTON, et al.; RESIDUAL TRUST OF THE HEIMAN FAMILY TRUST, et al.; VGR LIMITED PARTNERSHIP; MOTLEY LIVING TRUST DATED 12-23-70; BORDA FAMILY LP; THEODORE DAVID HAIGHT; LELAND D. HAYDEN, et al.; MARJORIE L. URREA, et al.; FRED FULSTONE, JR.; NEVADA STATE OF, et al.; GREGORY B. ADAMS, et al.; ARLENE M. HOFERER, et al.; CALIFORNIA DEPARTMENT OF FISH & GAME, et al.; NORMAN W. AND KELLI J. ANNETT FAMILY TRUST, et al.; ANTLER PEAK GOLD INC.; MICHAEL J. CHILTON; COUNTY OF MONO, CALIFORNIA, et al.; SMITH VALLEY FIRE PROTECTION DISTRICT, et al.; KYLE A. RUF; SHANE BRANDON; BOREALIS MINING CO.; J & S ROBERTS TRUST DATED 2-26-96; SUELLEN FULSTONE, et al.; MINERAL

COUNTY; CENTENNIAL
LIVESTOCK; U.S. BOARD OF
WATER COMMISSIONERS;
FENILI FAMILY TRUST, c/o
Peter Fenili and Veronica
Fenili, Trustees; SIX-N-
RANCH, INC., c/o Richard
and Cynthia Nuti; MICHAEL
NUTI; NANCY NUTI; RALPH
E. NUTI; MARY E. NUTI;
LAWRENCE M. NUTI; LESLIE
NUTI; MICA FARMS, LLC,
c/o Mike Faretto; JOHN AND
LURA WEAVER FAMILY
TRUST, c/o Lura Weaver,
Trustee; SMITH VALLEY
GARAGE, INC., c/o Dan
Smith and Shawna Smith;
DONALD GIORGI; LORIE
MCMAHON; MERLE
MCMAHON; LYON COUNTY,
        *Defendants-Appellees.*

Appeal from the United States District Court
for the District of Nevada
Robert Clive Jones, District Judge, Presiding

Argued and Submitted August 30, 2017
Pasadena, California

Filed May 22, 2018

Before: A. Wallace Tashima, Raymond C. Fisher,
and Jay S. Bybee, Circuit Judges.

Opinion by Judge Tashima

## SUMMARY[*]

### Water Rights

The panel reversed the district court's order dismissing, on res judicata grounds, an action brought by the United States and the Walker River Paiute Tribe against the Walker River Irrigation District and others concerning water rights in the Walker River basin.

This case began in 1924 when the United States filed suit in Nevada federal court to establish water rights in the Walker River Basin on behalf of the Walker River Paiute Tribe. In 1936, the court entered the Water River Decree awarding water rights to the Tribe and various other claimants. In 1940, after remand from the Ninth Circuit, the district court amended the original decree and retained jurisdiction to modify it. In 1991, the Walker River Irrigation District filed a petition invoking the court's continuing jurisdiction over the waters of the Walker River. The petition was in response to a California State Water Resources Control Board decision to issue restrictions on the District's California water licenses. The current appeals arise from the counterclaims in the 1991 action filed by the Tribe in 1992 (and later by the United

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

States) asserting new water rights. In May 2015, without briefing or argument on the issue, the district court *sua sponte* dismissed all of the Tribe's and the United States' counterclaims on *res judicata* or jurisdictional grounds.

The panel first held that the district court was correct that it retained jurisdiction to litigate additional rights in the Walker River Basin and to modify the 1936 Decree. On the merits, the panel held that the district court erred in characterizing the counterclaims as part of a new action. The panel concluded that based on the procedural history and the fact that the Tribe and the United States brought their counterclaims under the same caption as the 1924 action, the counterclaims did not constitute a new action. The panel further held that the district court erred by dismissing the claims *sua sponte* on the basis of res judicata without first giving the parties an opportunity to be heard on the issue. Moreover, the panel held that because the counterclaims were not a new action, traditional claim preclusion and issue preclusion did not apply.

The panel directed that on remand, the case should be randomly reassigned to a different district judge. The panel reluctantly concluded that reassignment was appropriate because it believed (1) that Judge Jones would have substantial difficulty putting out of his mind previously expressed views about the federal government and its attorneys, and (2) that reassignment will preserve the appearance of justice.

**COUNSEL**

Elizabeth Ann Peterson (argued), David L. Negri, Andrew "Guss" Guyarino, Katerine J. Barton, David C. Shilton, and William B. Lazarus, Attorneys; Jeffrey H. Wood, Acting Assistant Attorney General; United States Department of Justice, Washington, D.C.; for Plaintiff-Counterclaimant-Appellant.

Wes Williams Jr. (argued) Schurz, Nevada, for Intervenor-Plaintiff-Appellant.

Gordon H. DePaoli (argued) and Dale E. Ferguson, Woodburn & Wedge, Reno, Nevada, for Defendant-Appellee Walker River Irrigation District.

Bryan L. Stockton (argued), Senior Deputy Attorney General; Adam Paul Laxalt, Attorney General; Office of the Attorney General, Carson City, Nevada; for Defendant-Appellee Nevada Department of Wildlife.

Roderick E. Walston (argued) and Steven G. Martin, Best Best & Krieger, Walnut Creek, California; Stephen B. Rye, District Attorney, Lyon County District Attorney's Office, Yerington, Nevada; Jerry M. Snyder, Reno, Nevada; Stacy Simon, County Counsel, Office of the County Counsel, Mammoth Lakes, California; Therese A. Ure, Schroeder Law Offices P.C., Reno, Nevada; for Defendants-Appellees Lyon County, et al.

**OPINION**

TASHIMA, Circuit Judge:

This case is but one among a group of related actions in a long-running and complex dispute over water rights in the Walker River Basin.  This case began in 1924 when the United States filed suit in Nevada federal court to establish water rights in the Walker River Basin on behalf of the Walker River Paiute Tribe ("Tribe").  In 1936, the court entered a decree awarding water rights to the Tribe and various other claimants.  In 1940, after remand from the Ninth Circuit, the district court amended the original decree and retained jurisdiction to modify it.[1]

The issues we confront in these appeals stem from the counterclaims filed by the Tribe in 1992 (and later by the United States) asserting new water rights.  The district court ordered the Tribe and the United States to name as counterdefendants all water rights claimants in the Walker River Basin and to serve them with summons and the counterclaims.  In 2013, after service was substantially complete, Judge Robert Clive Jones[2] ordered briefing on Rule 12(b) issues related to jurisdiction and expressly ordered the litigants not to address other issues, such as *res judicata*, which were to be addressed at a later date.  Nonetheless, in May 2015, without briefing or argument on the issue, the district court *sua sponte* dismissed all of the Tribe's and the

---

[1] Following the convention of the parties, we refer to the amended decree as the Decree or the 1936 Decree.

[2] Judge Jones inherited this case in 2011 from the late Judge Edward C. Reed.

United States' counterclaims on *res judicata* or jurisdictional grounds. The Tribe and the United States appeal.

We hold that the district court had continuing jurisdiction over the counterclaims and that it erred in dismissing the claims on *res judicata* or jurisdictional grounds without giving the parties an opportunity to brief the issue. Accordingly, we reverse and remand. On remand, we also order the reassignment of this case to another district judge.

## I. Facts and Procedural Background[3]

### A. The Walker River and the Reservation

The Walker River originates in the Sierra Nevada Mountains in Mono County, California, and terminates at Walker Lake in Mineral County, Nevada. The river is comprised of two forks: the East Walker River and West Walker River. The two forks merge near Yerington, Nevada, where the river then flows through the Walker River Paiute Reservation ("Reservation"). The river continues another twenty-one miles south before draining into Walker Lake. The Walker River Basin covers approximately 4000 square miles. The Reservation dates to November 29, 1859, and was established for the benefit of the Tribe. The initial Reservation encompassed 320,000 acres of land located southeast of Reno, Nevada, in the Walker River Basin.

---

[3] Because of the long-running nature of disputes over Walker River Basin water rights and the relation of historical facts to the dispute now before this court, we include a somewhat extensive account of the facts and procedural background.

## B.  First Federal Proceeding

At the turn of the twentieth century, conflicting claims to water rights arose among residents of the Walker River Basin. In 1902, Miller & Lux Corporation, a cattle and land company, filed suit in federal court seeking adjudication of its water rights in the Walker River Basin vis-à-vis 150 upstream entities and individuals. *See Miller & Lux v. Rickey*, 146 F. 574 (C.C.D. Nev. 1906);[4] *Rickey Land & Cattle Co. v. Miller & Lux*, 218 U.S. 258, 259 (1910).  Two years later, Rickey Land & Cattle Company filed two actions in California state court against Miller & Lux, also seeking to quiet its title to water rights in the Walker River Basin. *See Rickey Land & Cattle*, 218 U.S. at 259.  Miller & Lux moved to enjoin the proceedings in California on the ground that the federal court in Nevada had acquired prior exclusive jurisdiction. *Id.* at 260.  The lower court agreed and enjoined the California proceedings. *Id.*  The Supreme Court affirmed. *Id.* at 262.

In 1919, the lower federal court issued the "Rickey Decree" apportioning the relative surface-water rights among the 151 parties.  Although neither the United States nor the Tribe participated in that litigation, the Rickey Decree recognized a state-law based irrigation water right for the Reservation. *See United States v. Walker River Irrigation Dist.*, 11 F. Supp. 158, 160 (D. Nev. 1935).

---

[4] *Miller & Lux* was filed in the Circuit Court for the District of Nevada.  That court was abolished in 1911, and its jurisdiction was transferred to the United States District Court for the District of Nevada.

## C. The 1924 Federal Proceeding

In 1924, the United States filed suit in the District of Nevada to establish federal water rights for the Reservation. At the time, the Reservation encompassed 86,400 acres of land. The named defendants were 253 individuals and entities located upstream from the Reservation. *See id.* at 159. The complaint, as amended in 1926, sought a right to an unimpeded flow of 150 cubic feet per second ("cfs") of water from the Walker River. The basis for the water claim was the original 1859 reservation of land, which the complaint alleged constituted an implicit "set aside . . . of the waters of the said Walker River and its tributaries [in the amount of] 150 cubic feet of water per second of time." In addition, the United States requested a determination of "the relative rights of the parties hereto in and to the waters of the said river and its tributaries in Nevada and California."

Although other reservations existed in the Walker River Basin as of 1926, the amended complaint did not assert claims to water rights on behalf of any other tribes. Nor did the amended complaint assert claims on behalf of the United States for any other federally owned properties in the Basin or seek groundwater rights for any tribe or federal property.

## D. The 1936 Decree

The district court issued a decision on June 6, 1935, and entered a decree on April 14, 1936. *Walker River Irrigation Dist.*, 11 F. Supp. 158. The court denied the United States' claim to a federal water right for the Reservation, concluding that the Tribe's only water rights were based on state-law principles of prior appropriation. *Id.* at 167. The bulk of the decree set forth the amounts of water awarded to the United

States and each of the other parties.  These awards included rights that the district court had adjudicated in the course of its proceeding, as well as rights incorporated from the Rickey Decree.

Paragraph XI of the Decree provides:

> Each and every party to this suit and their [sic] and each of their servants, agents and attorneys and all persons claiming by, through or under them, and their successors and assigns in and to the water rights and lands herein described, be and each of them hereby is forever enjoined and restrained from claiming any rights in or to the waters of Walker River and/or its branches and/or its tributaries, except the rights set up and specified in this decree . . . .

Paragraph XII provides that the decree "shall be deemed to determine all of the rights of the parties to this suit and their successors in interest in and to the waters of Walker River and its tributaries" with certain exceptions.

Paragraph XIV provides:

> The Court retains jurisdiction of this cause for the purpose of changing the duty of water or for correcting or modifying this decree; also for regulatory purposes, including a change of the place of use of any water user . . . .  The Court shall hereafter make such regulations as to notice and form or substance of any applications for change or modification of this

decree, or for change of place or manner of
use of water as it may deem necessary.

We reversed in part.  *United States v. Walker River
Irrigation Dist.*, 104 F.2d 334, 339–40 (9th Cir. 1939).  We
held that, under *Winters v. United States*, 207 U.S. 564
(1908), the federal government had reserved a federal water
right on behalf of the Tribe for irrigation with a priority year
of 1859, the year that the Reservation was established.  *Id.*
Contrary to the United States' allegations, however, the Ninth
Circuit concluded that the amount of the reserved right was
only 26.25 cfs because that was the amount needed to sustain
the 2100 acres of irrigable land on the Reservation.  *Id.* at
340.

On remand, the district court amended the original decree
in a few places.  For example, the phrase "as of the 14th day
of April, 1936" was added to Paragraph XII, so that the
amended clause reads: "This decree shall be deemed to
determine all of the rights of the parties to this suit and their
successors in interest in and to the waters of Walker River
and its tributaries *as of the 14th day of April, 1936*," with
certain exceptions.  (Emphasis added.)  The phrase "of point
of diversion or" was added to Paragraph XIV, so that the
amended paragraph reads: "The Court retains jurisdiction of
this cause for the purpose of changing the duty of water or for
correcting or modifying this decree; also for regulatory
purposes, including a change *of point of diversion* or of the
place of use of any water user . . . ."  (Emphasis added.)
Paragraph XI was not amended.

### E.  Later Filings in the 1924 Proceeding

Appellee Walker River Irrigation District ("WRID") is a Nevada irrigation district.  Appellees Lyon County *et al.* are (1) Lyon County, Nevada; (2) Mono County, California; and (3) ranching entities, ranchers, and other individuals.  Each of these parties holds certain water rights in the Walker River Basin under the 1936 Decree.  Appellee Nevada Department of Wildlife ("NDOW") is the state agency responsible for administering Nevada's wildlife laws.  Nev. Rev. Stat. § 501.331.

In 1991, WRID filed a petition in the 1924 case invoking the court's continuing jurisdiction over the waters of the Walker River.  The petition was in response to a California State Water Resources Control Board (the "Cal. Water Board") decision to issue restrictions on WRID's California water licenses.  WRID sought to enjoin the Cal. Water Board from implementing the restrictions; in the alternative, it sought to move the point of diversion for its storage rights from their locations in California to locations in Nevada.

In 1992, the Tribe answered WRID's petition and filed its own counterclaims in the same action.  As amended in 1997, the Tribe's counterclaims asserted three claims for relief.  The first counterclaim involves the right of the Tribe to store water in Weber Reservoir.  The second counterclaim involves the right of the Tribe to use water on lands restored to the reservation pursuant to the Act of June 22, 1936, 49 Stat. 1806–07.  The third claim for relief asserts a right to use groundwater underlying and adjacent to the lands of the Reservation.

The United States also sought leave to file counterclaims. WRID opposed the United States' motion and moved to dismiss the Tribe's counterclaims on the ground that they amounted to a complaint in a new action. The district court rejected that position and allowed the United States to file its counterclaims. It reasoned that all claims – WRID's petition, the Tribe's counterclaims, and the United States' counterclaims – "arise[] out of the property rights established, and not established[,] in the Walker River Decree," and under the 1936 Decree, it retained "jurisdiction to manage the Decree as necessary." For administrative purposes, the court established a "subfile A" for WRID's request to modify the Decree and a "subfile B" for the Tribe's and United States' counterclaims.[5]

The United States amended its counterclaims in 1997. The amended counterclaims assert a total of eleven claims to water rights in the Walker River Basin, which fall into three categories: (1) claims on behalf of the Tribe;[6] (2) claims on behalf of various other Indian tribes and Indian individuals in the Walker River Basin; and (3) claims for several federal properties. According to the United States these are "all [of the] known federal interests within the Walker River Basin."

On April 18, 2000, the district court ordered the Tribe and the United States to name as counterdefendants and serve all

---

[5] The parties settled subfile A by stipulation in 2007.

[6] Such rights are "in addition to the right . . . awarded to the United States in the Decree entered . . . on April 15, 1936."

claimants whose rights in the Walker River Basin could be affected.[7]

### F.  The District Court's Decision

In 2011, on the retirement of Judge Reed, the case was reassigned to Judge Jones.  When attorneys representing the United States first appeared before Judge Jones, he told them he was "developing a policy" of "disallowing" or "debarring U.S. Attorneys from Washington . . . because of concerns about adherence to Nevada Bar standards and ethical standards."  The appearing attorneys informed him that they were based in Denver and Boise, and Judge Jones then stated that he had "no problem" and "would in fact grant the motion . . . to allow you to appear."  However, Judge Jones later denied them permission to appear.  He withdrew that order only after the United States filed a petition for a writ of mandamus in the Ninth Circuit to require Judge Jones to permit their appearance.[8]

In 2013, Judge Jones scheduled briefing on potential motions to dismiss the counterclaims.  At a status conference, he clarified that the first round of motions should address jurisdiction only: "[T]his isn't all motions to dismiss.  There will be a further deadline for that following this jurisdictional round. . . .  I don't want to address the other jurisdiction

---

[7] Initial service of approximately 3,280 parties was complete as of October 2014.

[8] The circumstances of Judge Jones' initial refusal to admit government counsel *pro hac vice* and his eventual recanting of that order after the government petitioned the Ninth Circuit for a writ of mandamus requiring their admission are recounted in *United States v. U.S. District Court (In re United States)*, 791 F.3d 945, 950 (9th Cir. 2015).

issues especially, for example, like *res judicata*, *U.S. versus Nevada*, unless it directly relates to jurisdiction." Appellees filed separate motions to dismiss under Rule 12(b)(1). WRID argued that, under the terms of the 1936 Decree, the district court lacked continuing jurisdiction to adjudicate new claims for water rights in the Walker River Basin, and that the United States and Tribe were required to file a new action.[9] Consistent with the court's instruction to argue only jurisdictional issues, briefing on the motions did not raise or address *res judicata*.

On May 28, 2015, the district court granted WRID's motion and dismissed all of the counterclaims either as barred by *res judicata*, or laches, or for lack of jurisdiction. The court first concluded that it retained continuing jurisdiction to adjudicate appellants' counterclaims: the Decree "is clear in favor of the Tribe's and the United States' reading of 'modify' to permit the adjudication of yet-unlitigated rights." The court reasoned that "[c]ontinued jurisdiction to 'modify' the Decree implies an ability to increase or decrease one's rights thereunder," and that "[t]he phrase 'correcting or modifying this decree' implies that modifications are to be distinguished from corrections, i.e., that changes to the Decree may be based on yet-unlitigated claims in addition to claims that were decided incorrectly or which suffer from scrivener's errors."

Despite concluding that it had jurisdiction, the district court abruptly reversed course and held that it "believes the present action is in fact a new action, and that the present claims are therefore precluded." The court gave two reasons

---

[9] NDOW's motion sought to dismiss only the claims to enjoin off-reservation groundwater pumping.

for construing the counterclaims as a new action.  First, the Decree "prevents the United States (like all parties) from claiming any additional rights beyond those adjudicated therein."  Second, "[t]he Sub-files were given their own administrative existences, so they are independent cases at least in form."  In determining that the new action was precluded, the court relied on *Nevada v. United States*, 463 U.S. 110 (1983), and the language in the 1936 Decree stating that the parties are "forever enjoined and restrained from claiming any rights in or to the waters of Walker River . . . except the rights set up and specified in this Decree."

The district court also noted that "[e]ven if the present Sub-file were not in substance a new action but better characterized as a Rule 60(b)(6) motion in the original action, laches would almost certainly bar the claims."

Finally, the district court denied NDOW's groundwater-related motion because no "particular claim by the United States or the Tribe [sought] to enjoin any particular groundwater pumping," and, moreover, the court would properly "preside over any separate action to enjoin groundwater pumping based on interference with decreed rights."

The Tribe and the United States timely appealed.

## II.  Standard of Review

Dismissal of a claim based on *res judicata* is reviewed *de novo*.  *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005).  The district court's interpretation of a judicial decree is also reviewed *de novo*, although this court typically "give[s] deference to the district court's

interpretation based on the court's extensive oversight of the decree from the commencement of the litigation to the current appeal." *Labor/Cmty. Strategy Ctr. v. L.A. Cty. Metro. Transp. Auth.*, 263 F.3d 1041, 1048 (9th Cir. 2001) (internal quotation marks omitted). However, deference to the district court is reduced where, as here, the district judge has not overseen the litigation from its inception. *Cf. Gates v. Gomez*, 60 F.3d 525, 530 (9th Cir. 1995).[10]

## III.    Discussion

### A.  Continuing Jurisdiction

At the outset, we must determine whether the district court had jurisdiction under the Decree to hear the counterclaims. We conclude that the district court was correct that it retained jurisdiction to modify water rights under the decree, but erred in concluding that the counterclaims constituted a "new action." As such, the district court had jurisdiction over the counterclaims.

Paragraph XIV of the 1936 Decree provides that "[t]he Court retains jurisdiction of this cause for the purpose of changing the duty of water or for correcting or modifying this decree; also for regulatory purposes, including a change of the place of use of any water user . . . ." The district court read that "modify" in this clause allows the court to adjudicate yet-unlitigated water rights. We agree. The court correctly reasoned that "[c]ontinued jurisdiction to 'modify' the Decree implies an ability to increase or decrease one's

---

[10] Recall that in this case, which originated in 1924, and in which the original Decree was entered in 1936, the case was not reassigned to Judge Jones until 2011, some 87 years after its inception.

rights thereunder," and that "[t]he phrase 'correcting or modifying this decree' implies that modifications are to be distinguished from corrections, i.e., that changes to the Decree may be based on yet-unlitigated claims in addition to claims that were decided incorrectly or which suffer from scrivener's errors."

We reject appellees' argument that "modifying" should not be read so broadly. First, although the term "modifying" would plausibly support either a broader or a narrower meaning, *see* BLACK'S LAW DICTIONARY 1156 (10th ed. 2014) (defining "[m]odification" as "[a] change to something; an alteration or amendment"), appellees' interpretation is particularly crabbed and selective. Specifically, appellees argue that "the modification provision of Paragraph XIV . . . authorizes the court to (1) modify the duties and authority of the Water Master," "(2) modify the definitions in the Decree, such as the definition of 'irrigation seasons,'" and "(3) modify the duties of . . . the parties to pay costs." In essence, appellees' position is that the district court retained jurisdiction to modify every provision in the Decree except those provisions setting forth water rights. Paragraph XIV does not support appellees' proposed interpretation.

Second, we agree with the district court that the juxtaposition of "correcting" with "modifying" in Paragraph XIV supports the broader reading of modify by suggesting that the terms have distinct meanings. In contrast, appellees urge us to apply *noscitur a sociis*, the principle that "a word is known by the company it keeps," *Yates v. United States*, 135 S. Ct. 1074, 1085 (2015), and draw the opposite inference from the word "correcting." They argue that "the fact that the word 'modifying' is used in conjunction with the word 'correcting' . . . indicates that the word 'modifying'

does not refer to changes based on additional water rights" because "'correcting' connotes a relatively minor, technical change."

Courts apply the *noscitur a sociis* canon to construe a single term "in a list of terms," where that term appears open-ended but should be cabined in light of the other terms in the list. *See id.* at 1085–86 (construing the term "tangible object" as used in "any record, document, or tangible object"). The purpose of the rule is "to avoid ascribing to one word a meaning so broad that it is *inconsistent* with its accompanying words." *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995) (emphasis added). While we agree that "correcting" connotes a minor, technical change, we disagree with appellees' contention that the other powers listed in the jurisdiction provision are of a lesser magnitude than the power to add water rights pursuant to the term "modifying." The only power that is obviously minor is "correcting"; the others could just as likely refer to expansive powers. There is no obvious limitation on the retention of jurisdiction "for regulatory purposes." In addition, the meaning of "the duty of water" at the time of the Decree was the "quantity required for crop production on a given area, usually during a year or irrigation season." *See* A.P. Davis & Will R. King, Dep't of the Interior, *Manual of the United States Reclamation Service* 326 (1917). Thus, to change the duty of water would also change the quantities of water awarded, as the amount awarded is equal to the duty of water multiplied by the acreage. Appellees' argument that "modifying" should be read narrowly is unconvincing.

Third, the Supreme Court in *Arizona v. California*, 460 U.S. 605 (1983) (*Arizona II*), construed a water rights decree with similar jurisdictional language as retaining

jurisdiction to address yet-unlitigated rights to the same waterway. *Arizona II* addressed requests by the United States and Indian tribes "to have . . . water rights increased" from what they were determined to be in *Arizona v. California*, 373 U.S. 546 (1963) (*Arizona I*), "earlier proceedings" in the same case. 460 U.S. at 608. *Arizona I* culminated in a decree in which the Court "retained jurisdiction over the case for the purpose of further modifications and orders that [the Court] deemed proper." *Id.* at 611. The specific language of the provision retaining jurisdiction was:

> Any of the parties may apply at the foot of this decree for its amendment or for further relief. The Court retains jurisdiction of this suit for the purpose of any order, direction *or modification* of the decree, or any supplementary decree, that may at any time be deemed proper in relation to the subject matter in controversy.

*Id.* at 618 (emphasis added).

The *Arizona II* Court interpreted such language to "grant[] [it] power to correct certain errors, to determine reserved questions, and if necessary, to make modifications in the Decree." *Id.* It therefore exercised jurisdiction to consider the question of whether the tribes were "entitled to additional water rights," although it circumscribed "the circumstances which make exercise of this power appropriate."[11] *Id.* at 613, 618. Similar to the *Arizona I* decree, the 1936 Decree retains jurisdiction for the purpose of "modifying [the] decree."

---

[11] Those restrictions go to the question of whether the claims are precluded, not whether the court has jurisdiction.

Because the Supreme Court in *Arizona II* relied on a reference to modification of the *Arizona I* decree to conclude that it retained jurisdiction to hear a suit asserting claims for additional rights, we conclude that the 1936 Decree may properly be read as also retaining jurisdiction in the Nevada district court to litigate additional rights in the Walker River Basin.

NDOW and the Lyon County *et al.* parties, take the position that, despite the retention of jurisdiction in Paragraph XIV, Paragraph XI of the 1936 Decree declines jurisdiction to adjudicate additional rights to the Walker River. Paragraph XI states:

> Each and every party to this suit and their [sic] and each of their servants, agents and attorneys and all persons claiming by, through or under them, and their successors and assigns in and to the water rights and lands herein described, be and each of them hereby *is forever enjoined and restrained from claiming any rights in or to the waters of Walker River and/or its branches and/or its tributaries, except the rights set up and specified in this decree . . . .*

(Emphasis added.)   Lyon County notes that the decree construed in *Nevada*, 463 U.S. 110, contained almost identical language.

This paragraph, however, does not bear on the scope of the district court's continuing *jurisdiction*. Unlike Paragraph XIV, Paragraph XI does not mention jurisdiction. It instead purports to limit claims that the parties may bring in any

forum. Thus, under appellees' reading, Paragraph XI would bar the United States, the Tribe, and any other party to the 1924 action from ever bringing another claim to rights in the Walker River Basin *in any court*, even if the basis for such claim – under state or federal law – arose after the 1936 Decree was entered.

The better reading of Paragraphs XI and XII is that, together, they reiterate standard preclusion principles, *i.e.*, that no party may relitigate a claim to water rights in the Walker River Basin, in the Nevada District Court or any other court, that was litigated in the original case as of April 14, 1936. *Nevada v. United States* supports this interpretation, as the *Nevada* Court construed nearly identical language in a decree not to determine the existence of continuing jurisdiction, but instead in applying the principles of *res judicata*.

Finally, we hold that the district court erred in characterizing the counterclaims as constituting a new action. The district court based its decision on the fact that Judge Reed assigned the counterclaims to a "subfile" and thus gave them "their own administrative existence[]." However, this conclusion contradicts the established procedural practice of the case, and previous orders from Judge Reed. First, designating a subfile (emphasis on the prefix "sub") logically means that the contents are *part* of the larger case and not an entirely new action. In this long-running case, subfiles have been used to aid administrative convenience and organization. For example, in 1991, when WRID petitioned for a modification of the decree it asked the court to designate "a subproceeding number" for the action. The district court acceded to this request, designating the petition as subfile A. None of the parties argued that this constituted "a new

action."   Second, Judge Reed, in denying WRID's 1992 motion to dismiss the counterclaims, already rejected the argument that the counterclaims should be considered as claims in a new action.[12]  Based on the procedural history of this case, and the fact that the Tribe and the United States brought their counterclaims under the same caption as the 1924 action, we conclude that these counterclaims do not constitute a new action.[13]

## B.  *Res Judicata*

This circuit has never "upheld a dismissal for claim or issue preclusion where the parties were not given any opportunity to be heard on the issue," *Headwaters v. U.S. Forest Serv.*, 399 F.3d 1047, 1055 (9th Cir. 2005), and we decline to do so here.  Our decision is further bolstered by the fact that the district court explicitly told the parties not to

---

[12] Although the parties do not make the argument, the doctrine of "law of the case" would also appear to support continuing application of the principle adopted by Judge Reed.

[13] Although it is unclear, the district court may also have relied on the similarity between the preclusive language in Paragraph XI and the Orr Ditch decree at issue in *Nevada v. United States* to conclude that the counterclaims should constitute a new action.  As discussed above, Paragraph XI does not relate to the court's jurisdiction.  Further, *Nevada* is distinguishable on both form and substance.  On form, *Nevada* is distinct because the parties there filed their claims as a new action, under a new caption.  *See Nevada*, 463 U.S. at 118–19.  On substance, it is distinct because the Orr Ditch decree at issue in *Nevada* did not reserve jurisdiction for the district court to "modify" the document.  *See United States v. Orr Water Ditch Co.*, Equity No. A3 at 88 (D. Nev. 1944). Therefore, unlike the Tribe and the United States here, the plaintiffs in *Nevada* were required to bring their claims in a new action because they had no avenue to modify the underlying decree.

brief *res judicata* issues, before dismissing on that ground. We therefore reverse the district court's decision that all of the counterclaims were precluded.  On remand, the district court should "subject [any potential] res judicata decision to the rigors of the adversarial process."  *Nev. Emps. Ass'n v. Keating*, 903 F.2d 1223, 1225 (9th Cir. 1990).

Furthermore, because we have concluded that the counterclaims are not a new action, traditional claim preclusion and issue preclusion do not apply.  *See Arizona v. California*, 460 U.S. 605, 619(`1983) ("*[R]es judicata* and collateral estoppel do not apply . . . [where] a party moves the rendering court in the same proceeding to correct or modify its judgment.").  Instead, the counterclaims are "subject to the general principles of finality and repose, absent changed circumstances or unforeseen issues not previously litigated." *Id.*

## C.  Reassignment

The United States requests that, on remand, this case be reassigned to a different district judge.  "We reassign only in rare and extraordinary circumstances, such as when the district court has exhibited personal bias or when reassignment is advisable to maintain the appearance of justice."  *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1045 (9th Cir. 2015) (internal quotation marks and citations omitted).

To determine whether reassignment is appropriate, we court consider:

> (1)  whether the original judge would reasonably be expected upon remand to have

substantial difficulty in putting out of his or her mind previously expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving appearance of fairness.

*United States v. Rivera*, 682 F.3d 1223, 1237 (9th Cir. 2012). "The first two of these factors are of equal importance, and a finding of one of them would support a remand to a different judge." *Id.* (internal quotation marks omitted).

We reluctantly conclude that reassignment is appropriate here because we believe (1) that Judge Jones would have substantial difficulty putting out of his mind previously expressed views about the federal government and its attorneys, and (2) that reassignment will preserve the appearance of justice.[14]  *See United States v. Estate of Hage*, 810 F.3d 712, 722 (9th Cir. 2017) (holding that Judge Jones "harbored animus toward the federal agencies" and that "the judge's bias and prejudgment are a matter of public record"); *Nat'l Council of La Raza*, 800 F.3d at 1046; *In re United States*, 791 F.3d at 958 (concluding that Judge Jones' exclusion of federal government attorneys appeared to be

---

[14] This opinion is filed concurrently with dispositions in *United States v. United States Board of Water Commissioners* (Nos. 15-16316, 15-16317, 15-16319, 15-16321, 15-16489) and *United States v. Walker Lake Working Group* (No. 15-16342).  Our decision to reassign this case to a different district judge upon remand necessarily applies to all of these related appeals, which arise out of the same case.

based on his personal hostility to federal government policies and officials).

When Justice Department attorneys appeared in this case, Judge Jones stated that he was "developing a policy" of "disallowing" or "'debarring' U.S. Attorneys from Washington, D.C. because of concerns about their adherence to 'ethical standards.'" *See id.* at 950. When the Justice Department attorneys informed Judge Jones that they were from the Boise and Denver offices, Judge Jones still denied the attorneys' applications to appear. Only after the United States filed a petition for a writ of mandamus with this Court to order Judge Jones to grant the *pro hac vice* admissions did Judge Jones reverse his decision and allow the Justice Department attorneys to appear. *Id.* at 951.

Because Judge Jones' statements are coupled with his unprecedented *sua sponte* dismissal of the United States' counterclaims, we conclude that reassignment is necessary. In a prior case, the Ninth Circuit also relied on Judge Jones' *sua sponte* rulings to support a decision to reassign. *See Nat'l Council of La Raza*, 800 F.3d 1046 (noting two *sua sponte* rulings against out-of-state attorneys in deciding to reassign the case to another judge on remand). Here, even after admitting the government attorneys, Judge Jones demonstrated his unwillingness to consider fairly the United States' interests in this case by making the unprecedented decision to *sua sponte* dismiss the counterclaims on *res judicata* grounds, after ordering counsel not to brief the issue. For these reasons we conclude that Judge Jones would have substantial difficulty in fairly considering the United States' counterclaims on remand. These facts also support reassigning the case to a different judge in order to preserve the appearance of justice.

While we appreciate that the United States' and the Tribe's counterclaim proceeding is only a "sub-file" of this long-running case, it is nonetheless an integral part of the Walker River Basin Water Rights litigation and cannot be separated from it.[15] To be clear, therefore, this reassignment order applies to all aspects of the Walker River Basin water rights case pending in the District of Nevada.

## IV.    Conclusion

While the district court was correct that it retained jurisdiction to modify the Decree, the district court erred in characterizing the counterclaims as part of a new action and then *sua sponte* dismissing them on *res judicata* grounds. We therefore reverse the order of the district court and remand for further proceedings consistent with this opinion. On remand, the case shall be randomly reassigned to a different district judge.

**REVERSED, REMANDED and REASSIGNED.**

---

[15] This is attested to by Judge Jones' order that all 3,280 claimants to Walker River Basin water rights be served with summons and the United States' counterclaims in this sub-file proceeding. *See* footnote 7, *supra*, and accompanying text.