**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

DEC 23 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

COTTONWOOD ENVIRONMENTAL
LAW CENTER,

        Plaintiff-Appellant,

  v.

DAVID BERNHARDT, in his official
capacity as Acting Secretary of the Interior;
et al.,

        Defendants-Appellees,

FORT PECK TRIBES, The Assiniboine and
Sioux Tribes of the Fort Peck Indian
Reservation; INTERTRIBAL BUFFALO
COUNCIL,

        Intervenor-Defendants-
Appellees.

No.   19-35150

D.C. No. 2:18-cv-00012-SEH

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, District Judge, Presiding

Argued and Submitted December 10, 2019
Seattle, Washington

Before: GRABER, BERZON, and HIGGINSON,[**] Circuit Judges.

---

    [*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Plaintiff Cottonwood Environmental Law Center ("Cottonwood") appeals the dismissal with prejudice of its second amended complaint for failure to state a claim on which relief can be granted. The second amended complaint pleads four claims under the National Environmental Policy Act of 1969 ("NEPA"), each seeking supplementation of the environmental impact statement for the Interagency Bison Management Plan ("Management Plan"). We affirm in part, reverse in part, and remand for further proceedings.

1. Cottonwood has adequately alleged facts demonstrating Article III standing to pursue its claims against the federal defendants. As in *Alliance for the Wild Rockies v. USDA*, 772 F.3d 592, 600 (9th Cir. 2014), Cottonwood's NEPA claims "arise[] from the Management Plan itself." Because the Management Plan and successive adaptive-management documents authorize the bison hunting and hazing that are the source of Cottonwood's alleged injury, "this injury is 'fairly traceable' to the federal defendants' actions in approving the Management Plan." *Id.* Cottonwood's injury is redressable by the federal defendants because Cottonwood seeks supplementation of the environmental impact statement for the Management Plan, "a procedural right which could protect its alleged substantive interests." *Id.*

---

** The Honorable Stephen A. Higginson, United States Circuit Judge for the U.S. Court of Appeals for the Fifth Circuit, sitting by designation.

2.      We remand to the district court for a determination whether Cottonwood has alleged facts demonstrating Article III standing to pursue its NEPA claims against the State of Montana. "Usually, the federal government is the only proper defendant in an action to compel compliance with NEPA." *Rattlesnake Coal. v. EPA*, 509 F.3d 1095, 1105 (9th Cir. 2007) (quoting *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1091–92 (9th Cir. 2003)). But "nonfederal defendants may be enjoined if federal and state projects are sufficiently interrelated to constitute a single federal action for NEPA purposes." *Laub*, 342 F.3d at 1092 (alteration omitted) (quoting *Fund for Animals, Inc. v. Lujan,* 962 F.2d 1391, 1397 (9th Cir. 1992)). Because the district court did not reach the "fact-intensive" question whether the state and federal aspects of the Management Plan are "sufficiently interrelated" to subject the State of Montana to NEPA's requirements, it should do so on remand. *Id.*

3.      Counts 1 and 3 of the second amended complaint state a claim on which relief can be granted. First, federal defendants do not contest that the Management Plan constitutes an "ongoing" action "that could require supplementation" under NEPA. *Norton v. S. Utah Wilderness All. (SUWA)*, 542 U.S. 55, 73 (2004). Unlike the policy-setting documents at issue in *SUWA*, *id.* at 70–71, the Management Plan identifies specific actions that federal defendants will

take, such as capturing bison at particular sites and testing them for brucellosis.[1] The plan also adopts an adaptive-management approach under which "future management actions could be adjusted, based on feedback from implementation of the proposed risk management actions." Federal defendants' active and dynamic implementation of the Management Plan demonstrates ongoing federal action.

Second, no party contests that Count 1 plausibly alleges the existence of information bearing on the Management Plan that is "both new and significant," thus requiring a supplemental environmental impact statement. *See Protect Our Cmtys. Found. v. LaCounte*, 939 F.3d 1029, 1040 (9th Cir. 2019). Count 3 also plausibly alleges the existence of such information: it asserts that a 2017 study by the National Academy of Sciences "indicates that the brucellosis that is being spread to cattle in the Greater Yellowstone Area is traceable to elk, not bison." The second amended complaint also alleges that one goal of the Management Plan is to "prevent[] brucellosis transmission from bison to cattle." Because the recent study may provide insight into the risk of brucellosis transmission from bison to cattle and thus affect the plan's focus on avoiding such transmission, Count 3 states a plausible claim for supplementation under NEPA.

---

[1] In determining whether the complaint states claims, we consider the Management Plan as well as the text of the second amended complaint. The complaint refers to the plan, which is central to Cottonwood's claims. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

4.    Counts 2 and 4 do not state plausible claims for NEPA supplementation. Count 2 alleges that defendants are required to supplement the environmental impact statement to address human "safety concerns" related to the hazing of bison, but does not plausibly allege that the safety concerns are "new." Hazing has been authorized under the Management Plan since it was adopted in 2000. Cottonwood does not allege that defendants failed to consider human safety concerns related to hazing as part of their initial NEPA analysis, nor does Cottonwood allege that any recent incidents have given rise to new or different safety concerns.

Count 4 alleges that defendants are required to supplement the environmental impact statement because the National Park Service has "presented" a new bison "population objective for the Park." Because the second amended complaint lacks allegations about whether the Park Service has actually updated the population objective or how a revised population objective might affect bison management, Count 4 does not plausibly allege the existence of "significant" information requiring supplementation.

As there could be facts that would support Counts 2 and 4, we remand to the district court to allow Cottonwood an opportunity to seek leave to amend its complaint.

5.    Cottonwood has not established Article III standing to support

paragraph E of its prayer for relief, relating to quarantine operations. The second amended complaint contains no other mention of quarantine operations and pleads no facts suggesting that the quarantine operations relate to the hunting and hazing that are the source of Cottonwood's alleged injuries. There could, however, be facts that would support Cottonwood's standing to request the relief sought in paragraph E, so we remand to the district court to allow Cottonwood an opportunity to seek leave to amend its complaint.[2]

**AFFIRMED in part, REVERSED in part, and REMANDED.**

---

[2] We deny Cottonwood's request to assign the case to a different judge on remand, as Cottonwood has not satisfied the criteria to establish that reassignment is appropriate. *See United States v. Walker River Irrigation Dist.*, 890 F.3d 1161, 1173 (9th Cir. 2018) (explaining criteria).