**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| MINERAL COUNTY,<br>*Intervenor-Plaintiff-Appellant*,<br><br>WALKER LAKE WORKING GROUP,<br>*Defendant-Appellant*,<br><br>and<br><br>UNITED STATES OF AMERICA,<br>*Plaintiff*,<br><br>WALKER RIVER PAIUTE TRIBE,<br>*Intervenor-Plaintiff*,<br><br>v.<br><br>WALKER RIVER IRRIGATION DISTRICT; NEVADA DEPARTMENT OF WILDLIFE; FENILI FAMILY TRUST, c/o Peter Fenili and Veronica Fenili, Trustees; SIX N RANCH, INC., c/o Richard and Cynthia Nuti; MICHAEL NUTI; NANCY NUTI; RALPH E. NUTI; MARY E. NUTI; LAWRENCE | No. 15-16342<br><br>D.C. No.<br>3:73-cv-00128-RCJ-WGC<br><br><br>ORDER AND AMENDED ORDER CERTIFYING QUESTIONS TO THE SUPREME COURT OF NEVADA |

M. NUTI; LESLIE NUTI; MICA FARMS, LLC, c/o Mike Faretto; JOHN AND LURA WEAVER FAMILY TRUST, c/o Lura Weaver, Trustee; SMITH VALLEY GARAGE, INC., c/o Dan Smith and Shawna Smith; DONALD GIORGI; LORIE MCMAHON; MERLE MCMAHON; CENTENNIAL LIVESTOCK; LYON COUNTY; ANNETT'S MONO VILLAGE; F.I.M. CORPORATION; R.N. FULSTONE COMPANY; JAMES T. FOUSEKIS, Trustee; CHRIS H. GANSBERG, JR.; FAYE E. GANSBERG; TODD GANSBERG; HUNEWILL LAND & LIVESTOCK CO., INC.; DAVID SCEIRINE; PAMELA HAAS; VIRGINIA LAKE MUTUAL WATER COMPANY; MONO COUNTY, County Counsel,

       *Defendants-Appellees.*

Filed May 22, 2018
Amended August 20, 2018

Before: A. Wallace Tashima, Raymond C. Fisher
and Jay S. Bybee, Circuit Judges.

Order;
Amended Order

## SUMMARY[*]

### Water Rights

The panel amended the certification order, filed on May 22, 2018, in an appeal raising issues pertaining to Nevada state water law. The panel certified to the Supreme Court of Nevada the following questions:

> Does the public trust doctrine apply to rights already adjudicated and settled under the doctrine of prior appropriation and, if so, to what extent?

> If the public trust doctrine applies and allows for reallocation of rights settled under the doctrine of prior appropriation, does the abrogation of such adjudicated or vested rights constitute a "taking" under the Nevada

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Constitution requiring payment of just compensation?

## ORDER

The certification order filed May 22, 2018, and reported at 890 F.3d 1174, is amended. An amended certification order is filed concurrently with this order.

## AMENDED ORDER[1]

Pursuant to Rule 5 of the Nevada Rules of Appellate Procedure, we respectfully certify to the Supreme Court of Nevada the questions of law set forth in Section III of this order. The answers to the certified questions may determine issues pending before this court and their resolution will have significant implications for Nevada state water law. There is no clearly controlling precedent in the decisions of the Nevada Supreme Court.

We hold Mineral County's public trust claim for the reallocation of the waters of Walker River and the Takings Clause claim in abeyance pending the result of certification.

---

[1] This amended Order supersedes the published Order filed May 22, 2018.

## I. Background

The circumstances here are virtually identical to those that led to the Nevada Supreme Court's decision in *Mineral County v. Nevada Department of Conservation & Natural Resources*, 20 P.3d 800, 802–05 (Nev. 2001), in which Mineral County and the Walker Lake Working Group (the "Working Group") brought essentially the same suit as this one.  In *Mineral County*, the Nevada Supreme Court ultimately declined to exercise jurisdiction in light of the federal district court's continuing and exclusive jurisdiction over the Walker River Basin litigation. *See id.* at 807.  We reproduce the relevant background here in brief.

## A.  The Walker River Basin and Walker Lake's Decline

The Walker River Basin covers about 4000 square miles, running northeast from its origins in the Sierra Nevada Mountains in California before turning south and ultimately flowing into Walker Lake in Nevada.  The first quarter of the basin lies in California, and California accounts for a majority of the precipitation and surface water flow into the basin. The vast majority of the water is consumed across the border in Nevada.

Walker Lake is about 13 miles long, five miles wide and 90 feet deep – a large lake by most any measure.  But its size and volume have shrunk significantly since they were first measured in 1882.  By 1996, Walker Lake had retained just 50 percent of its 1882 surface area and 28 percent of its 1882 volume.   Today's Walker Lake also suffers from high concentrations of total dissolved solids ("TDS") – meaning it has a high salt content, low oxygen content and a high temperature.

These conditions have drastically degraded the lake's environmental and economic well-being.  The high TDS concentrations have proven so inhospitable to fish species that, according to Mineral County, much of the lake's fishing industry "has been eliminated for the time being."  Walker Lake's decline also threatens its status as an important shelter for migratory birds, and it has "drive[n] away the many Nevadans and other Americans who used Walker Lake for recreational enjoyment and economically productive activities."  Although the parties dispute the cause of Walker Lake's troubles, it seems clear that upstream appropriations play at least some part, together with declining precipitation levels and natural lake recession over time.

## B.  Litigation Over Water Rights in the Basin

In an effort to protect and rehabilitate Walker Lake, Mineral County intervened in the long-running litigation over water rights in the Walker River Basin.  That litigation began in 1902, when one cattle and land company sued another in the United States District Court for the District of Nevada over appropriations from the Walker River.    After considerable back and forth in state and federal court – including a Supreme Court decision holding that the Nevada federal court had prior, exclusive jurisdiction over the action, *see Rickey Land & Cattle Co. v. Miller & Lux*, 218 U.S. 258, 262 (1910) – the case ended in 1919.

Five years later, the United States brought a new action in Nevada federal court, seeking to establish the water rights of the Walker Lake Paiute Tribe.  After 12 more years of litigation – bringing us to 1936 – that proceeding resulted in the Walker River Decree.  The Walker River Decree adjudicated the water rights of hundreds of claimants under

the doctrine of prior appropriation.[2]  The Decree also created the Walker River Commission and the United States Board of Water Commissioners.  The federal district court in Nevada has maintained jurisdiction over the Decree and its administration ever since.

In 1987, the Paiute Tribe intervened in the Walker River litigation to establish procedures for reallocating water rights under the Decree.  Since that proceeding's conclusion in 1988, the Nevada State Engineer reviews all applications to change allocations under the Decree in Nevada, subject to review by the Nevada federal district court.  It appears that Nevada's prior appropriation law, which has largely been codified, governs the Engineer's decisions and the district court's review.  *See, e.g.*, Nev. Rev. Stat. § 533.370; *see also* Greg Walch, *Water Law: Treading Water Law — A Nevada Water Rights Primer*, 6 Nev. Law. 18, 18 (Nov. 1998) (discussing the history of prior appropriation and its codification in Nevada).  Next, in 1991, the Paiute Tribe and the United States sought recognition of the Tribe's right to a certain additional amount of water from the Walker River, under a principle that Native American tribes have superior water rights based on their relationship to the federal government.  That case is pending before this panel.  *See United States v. Walker River Irrigation Dist.*, No. 15-16478.

---

**[2]**  Under the doctrine of prior appropriation, "[t]he first appropriator of the water of a stream passing through the public lands . . . has the right to insist that the water shall be subject to his use and enjoyment to the extent of his original appropriation, and that its quality shall not be impaired so as to defeat the purpose of its appropriation."  *Lobdell v. Simpson*, 2 Nev. 274, 277–78 (1866) (quoting *Butte Canal & Ditch Co. v. Vaughn*, 11 Cal. 143, 153–54 (1858)).

## C.  Mineral County's Intervention

In 1994, Mineral County moved to intervene in the Decree litigation.  The district court granted the motion in 2013.  The amended complaint in intervention alleges that "[a]ctivities and businesses attributable to the presence and use of Walker Lake represent[] approximately 50% of the economy of Mineral County."  The complaint asks the Decree court, "pursuant to its continuing jurisdiction under . . . the . . . Decree, [to] reopen and modify the final Decree to recognize the rights of Mineral County . . . and the public to have minimum levels [of water] to maintain the viability of Walker Lake."  Mineral County seeks recognition "that a minimum of 127,000 acre/feet [of water] per year to Walker Lake is . . . required under the doctrine of maintenance of the public trust."[3]

The Working Group – already a party to this litigation as a right-holder under the Decree – supports Mineral County's position.  Because of the posture of this case, the Working Group is considered a defendant as to Mineral County's intervention.  But the Working Group "always has supported efforts to transfer water rights for use in Walker Lake . . . and has supported the enforcement of the public trust doctrine for this same purpose."

---

[3] Under the public trust doctrine, states hold navigable waterways within their borders in trust for the good of the public.  *See Lawrence v. Clark County*, 254 P.3d 606, 607 (Nev. 2011); *see also Mineral County*, 20 P.3d at 807 (Rose, J., concurring) ("In its most fundamental terms, the public trust doctrine provides that . . . all of a state's navigable waterways are held in trust by the state for the benefit of the people and that a state official's control of those waters is forever subject to that trust.").

In 2015, the district court dismissed the amended complaint in intervention.  First, the district court held Mineral County lacked standing to assert its public trust claim.  It concluded Mineral County's claim "was based purely on a parens patriae theory" of standing – i.e., that Mineral County did not assert any of its own interests, only those of its citizens – and that a county lacks the ability to sue as parens patriae.

Notwithstanding its conclusion on standing, the district court also addressed the merits of Mineral County's public trust claim.  It concluded the public trust doctrine may factor into *future* allocations of water, but that using the doctrine to reallocate rights already adjudicated under the Decree would constitute a taking and require just compensation.  Invoking the political question doctrine, the court concluded it lacked authority to order Nevada to effectuate such a taking.  The district court also held, without analysis, that Walker Lake is not part of the Walker River Basin under the Decree, and therefore that the Decree prohibits allocating any water specifically to the lake.

Mineral County timely appealed.  We have concluded the district court erred in dismissing the amended complaint in intervention for lack of standing.[4]  The remaining issue – whether the Walker River Decree can be amended to allow for certain minimum flows of water to reach Walker Lake – depends on whether the public trust doctrine applies to rights previously adjudicated and settled under the doctrine of prior

---

[4] In a concurrently filed memorandum disposition, we hold Mineral County has standing to assert its public trust claim.  Furthermore, we have concurrently decided that Walker Lake is within the Walker River Basin. *See United States v. U.S. Bd. of Water Comm'rs*, No. 15-16316.

appropriation and permits alteration of prior allocations.[5] This is an important question of Nevada water law we believe should be decided by the Nevada Supreme Court.

## II. Discussion

The Nevada Supreme Court expressly recognized the public trust doctrine under Nevada law in *Lawrence v. Clark County*, 254 P.3d 606 (Nev. 2011). *Lawrence* involved an attempt by the Nevada legislature to transfer state-owned land to Clark County. *See id.* at 608. Because the land may have been a navigable waterway when Nevada joined the United States, the Nevada State Land Registrar refused to transfer title, citing the public trust's prohibition on alienating land held in trust for the public. *See id.* The Nevada Supreme Court remanded after setting out a three-part test for assessing whether the public trust doctrine permits alienation of state land. *See id.* at 616–17.[6]

*Lawrence*, although formally recognizing the doctrine for the first time, traced public trust principles in Nevada law back to the state's founding, concluding the doctrine was "based on a policy reflected in the Nevada Constitution, Nevada statutes, and the inherent limitations on the state's sovereign power." *Id.* at 613. The court also noted it had applied public trust principles in several of its earlier

---

[5] We hold the subsequent takings claim in abeyance pending the result of certification.

[6] This test appears to be of limited relevance here because it addresses alienation of trust lands. The issues here involve the scope of the public trust doctrine and its relationship to the doctrine of prior appropriation and Nevada's statutory water law.

decisions. One of those decisions, *Mineral County v. Nevada Department of Conservation & Natural Resources*, appears to be particularly relevant here.

*Mineral County* involved the very case now under consideration, filed by Mineral County and the Working Group directly in the Nevada Supreme Court while the county's motion to intervene in this case was pending. Although the Nevada Supreme Court dismissed the action based on the federal court's prior exclusive jurisdiction, two aspects of *Mineral County* are relevant here. First, the Nevada Supreme Court effectively invited the federal court to certify the public trust question at issue here. *See Mineral County*, 20 P.3d at 807 n.35 ("[Mineral County and the Working Group] argue that if their motion to intervene in the federal court is eventually granted, they will seek to have this court decide the scope of the public trust doctrine pursuant to the federal abstention doctrine. If the federal court reviews this question, it can certify a question regarding the public trust doctrine pursuant to NRAP 5; therefore, the issue need not necessarily be addressed via the extraordinary remedy of a writ.").

Second, in *Mineral County*, Justice Rose (joined by Justice Shearing) wrote a concurrence addressing in broad strokes the public trust doctrine's application in this case. Justice Rose opined:

> Although the original objectives of the public trust were to protect the public's rights in navigation, commerce, and fishing, the trust has evolved to encompass additional public values – including recreational and ecological uses. Additionally, although the original

scope of the public trust reached only navigable water, the trust has evolved to encompass non-navigable tributaries that feed navigable bodies of water. This extension of the doctrine is natural and necessary where, as here, the navigable water's existence is wholly dependent on tributaries that appear to be over-appropriated.

. . . [T]he existence of the public trust doctrine in Nevada appears to be beyond debate. . . . This court has itself recognized that . . . public ownership of water is the most fundamental tenet of Nevada water law. Additionally, we have noted that those holding vested water rights do not own or acquire title to water, but merely enjoy a right to the beneficial use of the water. This right, however, is forever subject to the public trust, which at all times forms the outer boundaries of permissible government action with respect to public trust resources. In this manner, then, the public trust doctrine operates simultaneously with the system of prior appropriation.

. . . .

If the current law governing the water engineer does not clearly direct the engineer to continuously consider in the course of his work the public's interest in Nevada's natural water resources, then the law is deficient. It is then appropriate, if not our constitutional

> duty, to expressly reaffirm the engineer's continuing responsibility as a public trustee to allocate and supervise water rights so that the appropriations do not substantially impair the public interest in the lands and waters remaining.

*Id.* at 807–09 (footnotes and internal quotation marks omitted).  No Nevada Supreme Court decision has formally adopted Justice Rose's concurrence, but *Lawrence* discussed it as persuasive authority in the development of Nevada's public trust law.  *See* 254 P.3d at 610–11.

In light of *Lawrence*, all parties agree the public trust doctrine exists in Nevada.  They disagree, however, over the doctrine's scope and whether it permits reallocation of rights settled under the separate doctrine of prior appropriation by the Walker River Decree.  No controlling Nevada precedent reconciles these doctrines, and the parties advance conflicting proposals.

Mineral County, for example, contends the public trust doctrine requires the State Engineer to reconsider previous allocations and, in doing so, to reserve a specified minimum flow for Walker Lake regardless of any other rights or considerations.  Although Mineral County points to a number of general principles suggesting the public trust doctrine applies to Walker Lake in *some* form, it has not presented authority for a version of the doctrine that holds absolute supremacy over the competing doctrine of prior appropriation.

The Lyon County appellees sit at the opposite end of the spectrum.  They contend, essentially, that once water rights

have been adjudicated and settled by decree, they are vested and no longer within the purview of the public trust doctrine. Lyon County is correct that Nevada considers water rights settled by decree "vested." *See* Nev. Rev. Stat. § 533.090 *et seq.* (entitled "Adjudication of Vested Water Rights"). Nevada law refers to water rights settled by decree as "final" and "conclusive," *id.* § 533.210, and the Nevada State Engineer – charged with administering Nevada's statutory water law – may neither "carry out his or her duties . . . in a manner that conflicts with any . . . decree or order issued by a state or federal court," *id.* § 533.0245, nor authorize any change in water use that "is inconsistent with any applicable federal or state decree," *id.* § 533.3703.  There is, moreover, significant authority stressing the importance of finality in the adjudication of water rights.  *See, e.g.*, *Arizona v. California*, 460 U.S. 605, 620 (1983) ("Certainty of rights is particularly important with respect to water rights in the Western United States. . . .   The doctrine of prior appropriation . . . is itself largely a product of the compelling need for certainty in the holding and use of water rights.").

Lyon County's position nonetheless appears to suffer from the same shortcoming as that of Mineral County.  It does not explain why the public trust doctrine must completely yield to the doctrine of prior appropriation (or, more precisely, to the decrees resulting from adjudications under the prior appropriation doctrine and Nevada's statutory water law).  The principles of finality on which Lyon County rests are encapsulated in Nevada's statutes and endorsed by the Supreme Court, but it is not clear they would compel Nevada to conclude that rights already adjudicated are exempt from the public trust.

There is significant authority suggesting rights already adjudicated may not be always and forever exempt from the public trust.  For example, the Nevada Supreme Court has held:

> the most fundamental tenet of Nevada water law [is that] "the water of all sources of water supply within the boundaries of the state whether above or beneath the surface of the ground, *belongs to the public*."  Indeed, even those holding certificated, vested, or perfected water rights do not own or acquire title to water.

*Desert Irrigation, Ltd. v. Nevada*, 944 P.2d 835, 842 (Nev. 1997) (alteration omitted) (quoting Nev. Rev. Stat. § 533.025).  Based on this statement, Justice Rose concluded in *Mineral County* that even "those holding vested water rights" hold "[t]his right . . . forever subject to the public trust."  20 P.3d at 808.  Quoting Justice Rose, *Lawrence* said the same thing in its exposition of the public trust doctrine (albeit without holding that vested water rights are subject to the public trust).  *See* 254 P.3d at 611; *see also Mineral County.*, 20 P.3d at 808–09 (Rose, J., concurring) (opining that "the public trust doctrine operates simultaneously with the system of prior appropriation" and urging the Nevada Supreme Court "to expressly reaffirm the [Nevada State] [E]ngineer's continuing responsibility as a public trustee to allocate and supervise water rights [pursuant to the public trust doctrine]").  Thus, Nevada might not altogether exempt vested, adjudicated rights from the public trust doctrine.

Under Justice Rose's view, that water rights have been settled by adjudication and decree may be relevant to

balancing the public trust doctrine against competing principles of Nevada water law.  But it does not necessarily mean the public trust – itself a fundamental principle of law – cannot disturb them.

Faced with a similar question in *National Audubon Society v. Superior Court*, 658 P.2d 709 (Cal. 1983), the California Supreme Court outlined the competing values underlying the public trust doctrine and doctrine of prior appropriation and, rather than deeming one doctrine supreme, balanced them:

> This case brings together for the first time two systems of legal thought: the appropriative water rights system which since the days of the gold rush has dominated California water law, and the public trust doctrine which, after evolving as a shield for the protection of tidelands, now extends its protective scope to navigable lakes.  Ever since we first recognized that the public trust protects environmental and recreational values, the two systems of legal thought have been on a collision course.  They meet in a unique and dramatic setting which highlights the clash of values.  Mono Lake is a scenic and ecological treasure of national significance, imperiled by continued diversions of water; yet, the need of Los Angeles for water is apparent, its reliance on rights granted by the board evident, the cost of curtailing diversions substantial.

> . . .   The prosperity and habitability of much of this state requires the diversion of great quantities of water from its streams for purposes unconnected to any navigation, commerce, fishing, recreation, or ecological use relating to the source stream.  The state must have the power to grant nonvested usufructuary rights to appropriate water even if diversions harm public trust uses. Approval of such diversion without considering public trust values, however, may result in needless destruction of those values.

*Id.* at 712 (citations omitted).  This approach appears similar to the one Justice Rose described – albeit in only general terms – in his *Mineral County* concurrence.  An approach along these lines would permit, but not require, reallocation of water rights that were previously settled.  *See Mineral County.*, 20 P.3d at 808–09 (Rose, J., concurring) (the two systems operate simultaneously, and the State Engineer must at least "consider" the public trust in making allocation decisions).[7]

---

[7] Lyon County and the Nevada Department of Wildlife (NDOW) also suggest Nevada law already incorporates the public trust doctrine by requiring that appropriated water be put to a "beneficial use."  The Nevada Supreme Court has not yet considered this question.  As in *National Audubon*, "no responsible body has ever" expressly considered the public trust in making allocation decisions. *Nat'l Audubon*, 658 P.2d at 728; *see also Mineral County*, 20 P.3d at 808 (Rose, J., concurring) ("If the current law governing the water engineer does not clearly direct the engineer to continuously consider . . . the public's interest in Nevada's natural water resources, then the law is deficient.").

We conclude that whether, and to what extent, the public trust doctrine applies to appropriative rights settled under the Walker River Decree is an open question.  Because this question has significant implications for Nevada's water laws and because we cannot be certain how the Nevada Supreme Court would resolve this matter, certification on this question of law is appropriate.

## III. Questions Certified to the Nevada Supreme Court

The questions of law we certify are:

> Does the public trust doctrine apply to rights already adjudicated and settled under the doctrine of prior appropriation and, if so, to what extent?

> If the public trust doctrine applies and allows for reallocation of rights settled under the doctrine of prior appropriation, does the abrogation of such adjudicated or vested rights constitute a "taking" under the Nevada Constitution requiring payment of just compensation?

## IV. Conclusion

Mineral County's appeal presents open and important questions under Nevada law that may be determinative of issues essential to the resolution of the claims raised in the present case.  We therefore respectfully request that the Supreme Court of Nevada accept and decide the questions certified.  "We recognize that the [Nevada Supreme] Court may, in its discretion, reword the certified question[s]."

*Progressive Gulf Ins. Co. v. Faehnrich*, 627 F.3d 1137, 1140 (9th Cir. 2010). We further agree to abide by the decision of the Nevada Supreme Court as specified in Rule 5 of the Nevada Rules of Appellate Procedure, which states "[t]he written opinion of the Supreme Court stating the law governing the questions certified . . . shall be res judicata as to the parties." Nev. R. App. P. 5(g).

In light of our decision to certify the issues set forth above, the submission of this appeal for decision is withdrawn, and all further proceedings in this case before our court are stayed pending final action by the Supreme Court of Nevada, save for any petition for rehearing regarding this order or the concurrently filed memorandum disposition. The Clerk is directed to administratively close this docket, pending further order. The Clerk of this court shall forward a copy of this order, under official seal, to the Supreme Court of Nevada, along with copies of all briefs and excerpts of record that have been filed with this court. The parties shall notify the Clerk of this court within 14 days of any decision by the Nevada Supreme Court to accept or decline certification. If the Nevada Supreme Court accepts certification, the parties shall then notify the Clerk of this court within 14 days of the issuance of the Nevada Supreme Court's opinion.

## Supplemental Material

Pursuant to Rule 5 of the Nevada Rules of Appellate Procedure, we include here the designation of the parties who would be the appellants and respondents in the Nevada Supreme Court, as well as the names and addresses of counsel.

**Appellants**:

Mineral County, Nevada and Walker Lake Working Group

Sean A. Rowe
Mineral County District Attorney
P.O. Box 1210
Hawthorne, NV 89415

Simeon M. Herskovits
Advocates for Community & Environment
P.O. Box 1075
El Prado, NM 87529-1075

Attorneys for Mineral County, Nevada and Walker Lake Working Group

**Respondents**:

Lyon County, Nevada et al. (Centennial Livestock, Bridgeport Ranchers and the Schroeder Group)

Stephen B. Rye, District Attorney
Lyon County
31 S. Main Street
Yerington, NV 89447
Attorney for Lyon County

Jerry M. Snyder
429 West Plumb
Reno, NV 89509
Attorney for Lyon County

Roderick E. Walston
Steven G. Martin
Best Best & Krieger LLP
2201 N. Main Street, Suite 390
Walnut Creek, CA 94596
Attorneys for Centennial Livestock

Therese A. Ure
Schroeder Law Offices, P.C.
440 Marsh Avenue
Reno, NV 89509
Attorney for the Schroeder Group

Walker River Irrigation District

Gordon H. DePaoli
Dale E. Ferguson
Woodburn and Wedge
6100 Neil Road, Suite 500
Reno, NV 89511
Attorneys for Walker River Irrigation District

Nevada Department of Wildlife

Adam Paul Laxalt, Attorney General
Bryan L. Stockton, Senior Deputy Attorney General
100 North Carson Street
Carson City, NV 89701-4717
Attorneys for Nevada Department of Wildlife

County of Mono, California

Stacey Simon, Acting County Counsel
Stephen M. Kerins, Deputy County Counsel
Office of the County Counsel
County of Mono
P.O. Box 2415
Mammoth Lakes, CA 93546
Attorneys for County of Mono, California

**QUESTIONS   CERTIFIED;   PROCEEDINGS STAYED.**

_____
Jay S. Bybee
United States Circuit Judge, Presiding