**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff*,

WALKER RIVER PAIUTE TRIBE,
*Intervenor-Plaintiff*,

and

WALKER LAKE WORKING GROUP,
*Defendant-Appellant*,

MINERAL COUNTY,
*Intervenor-Plaintiff-Appellant*,

v.

WALKER RIVER IRRIGATION
DISTRICT; NEVADA DEPARTMENT OF
WILDLIFE; FENILI FAMILY TRUST,
c/o Peter Fenili and Veronica Fenili,
Trustees; SIX N RANCH, INC., c/o
Richard and Cynthia Nuti; MICHAEL
NUTI; NANCY NUTI; RALPH E. NUTI;
MARY E. NUTI; LAWRENCE M. NUTI;
LESLIE NUTI; MICA FARMS, LLC, c/o
Mike Faretto; JOHN AND LURA
WEAVER FAMILY TRUST, c/o Lura
Weaver, Trustee; SMITH VALLEY
GARAGE, INC., c/o Dan Smith and

No. 15-16342

D.C. No.
3:73-cv-0128-
MMD

OPINION

Shawna Smith; DONALD GIORGI; LORIE MCMAHON; MERLE MCMAHON; CENTENNIAL LIVESTOCK; LYON COUNTY; ANNETT'S MONO VILLAGE; F.I.M. CORPORATION; R.N. FULSTONE COMPANY; JAMES T. FOUSEKIS, Trustee; CHRIS H. GANSBERG, JR.; FAYE E. GANSBERG; TODD GANSBERG; HUNEWILL LAND & LIVESTOCK CO., INC.; DAVID SCEIRINE; PAMELA HAAS; VIRGINIA LAKE MUTUAL WATER COMPANY; MONO COUNTY, County Counsel,
                          *Defendants-Appellees.*

Appeal from the United States District Court
for the District of Nevada
Miranda M. Du,[*] District Judge, Presiding

Argued and Submitted August 30, 2017
Submission Withdrawn May 2, 2018
Resubmitted January 21, 2021
Pasadena, California

Filed January 28, 2021

---

[*] This case was reassigned to Judge Du from Judge Robert Clive Jones on July 19, 2018.

Before:  A. Wallace Tashima, Susan P. Graber,[**] and Jay S. Bybee, Circuit Judges.

Opinion by Judge Tashima

_____

**SUMMARY**[***]

_____

### Water Rights

The panel affirmed in part, and vacated in part, the district court's dismissal of Mineral County's complaint that intervened in longstanding litigation over the appropriation of Walker River Basin waters.

In 1936, the U.S. District Court for the District of Nevada entered the Walker River Decree, adjudicating and settling water rights within the Walker River Basin under the doctrine of prior appropriation.  The County intervened, and alleged that the public interest and maintenance of the public trust required that water flows be allowed to reach Walker Lake to sustain the fish population and preserve recreational values for the County residents.  After the district court dismissed the County's complaint and the County appealed, the panel certified questions to the Nevada Supreme Court, which held

_____

[**] Judge Raymond C. Fisher was a member of the panel that certified questions to the Nevada Supreme Court.  Judge Fisher has since died and Judge Graber was randomly drawn to replace him.  *See* Ninth Cir. Gen Order 3.2(h).

[***] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

that Nevada's "public trust doctrine applies to rights already adjudicated and settled under the doctrine of prior appropriation," but that "the public trust doctrine does not permit reallocating water rights already adjudicated and settled under the doctrine of prior adjudication." *Mineral County v. Lyon County*, 473 P.3d 418, 425, 430 (Nev. 2020) (en banc).

In light of the Nevada Supreme Court's decision, the panel held that the district court properly dismissed the County's public trust claim to the extent it sought a reallocation of water rights adjudicated under the Decree and settled under the doctrine of prior appropriation. The panel vacated the judgment of the district court and remanded with instruction to consider the County's public trust doctrine claim to the extent it sought remedies that would not involve a reallocation of adjudicated water rights. The panel remanded to the district court to consider in the first instance the County's arguments that were not properly addressed by the district court. The panel rejected as untimely the County's challenge to the 1936 Decree itself.

## COUNSEL

Simeon M. Herskovits (argued) and Iris Thornton, Advocates for Community & Environment, El Prado, New Mexico; and Sean A. Rowe, Mineral County District Attorney, Hawthorne, Nevada; for Plaintiff-Intervenor-Appellant Mineral County, Nevada, and Defendant-Appellant Walker Lake Working Group.

Gordon H. DePaoli (argued) and Dale E. Ferguson, Woodburn and Wedge, Reno, Nevada, for Defendant-Appellee Walker River Irrigation District.

Roderick E. Walston (argued), and Steven G. Martin, Best Best & Krieger LLP, Walnut Creek, California; Stephen B. Rye, District Attorney, Lyon County, Yerington, Nevada; Jerry M. Snyder, Reno, Nevada; Therese A. Ure, Schroeder Law Offices P.C., Reno, Nevada; Stacey Simon, County Counsel; Stephen M. Kerins, Deputy County Counsel; Jason Canger, Assistant County Counsel; Office of the County Counsel, County of Mono, Mammoth Lakes, California; for Defendants-Appellees Lyon County, Centennial Livestock, Mono County, and the Schroeder Group.

Bryan L. Stockton (argued), Senior Deputy Attorney General; Tori N. Sundheim, Deputy Attorney General; Aaron D. Ford, Attorney General; Attorney General's Office, Carson City, Nevada; for Defendant-Appellee Nevada Department of Wildlife.

Robert W. Byrne, Senior Assistant Attorney General; Randy L. Barrow, Supervising Deputy Attorney General; Deborah Barnes and Tara L. Mueller, Deputy Attorneys General; Attorney General's Office, Oakland, California; for Amicus Curiae State of California.

John Echeverria, Vermont Law School, South Royalton, Vermont, for Amici Curiae Natural Resources Defense Council and Sierra Club.

David R. Owen, Professor of Law, UC Hastings College of Law, San Francisco, California; Richard M. Frank, Professor

of Environmental Practice, UC Davis School of Law, Davis, California; for Amici Curiae Law Professors.

Wes Williams, Law Offices of Wes Williams Jr. P.C., Schurz, Nevada, for Amicus Curiae Walker River Paiute Tribe.

**OPINION**

TASHIMA, Circuit Judge:

In 1936, the United States District Court for the District of Nevada entered the Walker River Decree ("Decree"), adjudicating and settling water rights within the Walker River Basin under the doctrine of prior appropriation. In the ensuing decades, these water allocations have adversely affected Walker Lake, the terminus of the Basin's water flows. The lake has lost more than half of its surface area and volume, and the lake's once-vibrant fishing and recreational activities—the lifeblood of Mineral County's economy and a significant source of County revenues—have been threatened. To address these effects, Mineral County (the "County") intervened in longstanding litigation over the Basin's waters, alleging that "[t]he public interest and maintenance of the public trust require[s] that the flows be allowed to reach Walker Lake that will sustain minimum levels for the naturally occurring fish population and provide for the preservation of Walker Lake for the citizens and residents of the County for recreational values, preservation of wildlife, and maintenance of the economy of Mineral County."

After the district court dismissed the County's complaint and the County appealed, we certified questions to the Nevada Supreme Court, *see Mineral County v. Walker River Irrigation Dist.*, 900 F.3d 1027, 1034 (9th Cir. 2018), which the state court has now answered, holding that Nevada's "public trust doctrine applies to rights already adjudicated and settled under the doctrine of prior appropriation," but that "the public trust doctrine does not permit reallocating water rights already adjudicated and settled under the doctrine of prior appropriation." *Mineral County v. Lyon County*, 473 P.3d 418, 425, 430 (Nev. 2020) (en banc).

In light of the Nevada Supreme Court's decision, we vacate the judgment of the district court and remand with instructions to consider the County's public trust doctrine claim to the extent it seeks remedies that would *not* involve a reallocation of adjudicated water rights. We also reject as untimely the County's challenge to the 1936 Decree itself.

## I.  BACKGROUND

We summarized the background of this litigation in our August 2018 certification order:

### A.  The Walker River Basin and Walker Lake's Decline

The Walker River Basin covers about 4000 square miles, running northeast from its origins in the Sierra Nevada Mountains in California before turning south and ultimately flowing into Walker Lake in Nevada. The first quarter of the basin lies in California, and California accounts for a majority of the

precipitation and surface water flow into the basin.  The vast majority of the water is consumed across the border in Nevada.

Walker Lake is about 13 miles long, five miles wide and 90 feet deep—a large lake by most any measure.  But its size and volume have shrunk significantly since they were first measured in 1882.  By 1996, Walker Lake had retained just 50 percent of its 1882 surface area and 28 percent of its 1882 volume.  Today's Walker Lake also suffers from high concentrations of total dissolved solids ("TDS")—meaning it has a high salt content, low oxygen content and a high temperature.

These conditions have drastically degraded the lake's environmental and economic well-being.  The high TDS concentrations have proven so inhospitable to fish species that, according to Mineral County, much of the lake's fishing industry "has been eliminated for the time being." Walker Lake's decline also threatens its status as an important shelter for migratory birds, and it has "drive[n] away the many Nevadans and other Americans who used Walker Lake for recreational enjoyment and economically productive activities."  Although the parties dispute the cause of Walker Lake's troubles, it seems clear that upstream appropriations play at least some part, together with declining precipitation levels and natural lake recession over time.

## B. Litigation Over Water Rights in the Basin

In an effort to protect and rehabilitate Walker Lake, Mineral County intervened in the long-running litigation over water rights in the Walker River Basin. That litigation began in 1902, when one cattle and land company sued another in the United States District Court for the District of Nevada over appropriations from the Walker River. After considerable back and forth in state and federal court—including a Supreme Court decision holding that the Nevada federal court had prior, exclusive jurisdiction over the action, *see Rickey Land & Cattle Co. v. Miller & Lux*, 218 U.S. 258, 262 (1910)—the case ended in 1919.

Five years later, the United States brought a new action in Nevada federal court, seeking to establish the water rights of the Walker Lake Paiute Tribe. After 12 more years of litigation—bringing us to 1936—that proceeding resulted in the Walker River Decree. The Walker River Decree adjudicated the water rights of hundreds of claimants under the doctrine of prior appropriation.[1] The Decree also created the

---

[1] "Like most western states, Nevada is a prior appropriation state. The prior appropriation doctrine grants '[a]n appropriative right [that] may be described as a state administrative grant that allows the use of a specific quantity of water for a specific beneficial purpose if water is available in

Walker River Commission and the United States Board of Water Commissioners. The federal district court in Nevada has maintained jurisdiction over the Decree and its administration ever since.

In 1987, the Paiute Tribe intervened in the Walker River litigation to establish procedures for reallocating water rights under the Decree. Since that proceeding's conclusion in 1988, the Nevada State Engineer reviews all applications to change allocations under the Decree in Nevada, subject to review by the Nevada federal district court. It appears that Nevada's prior appropriation law, which has largely been codified, governs the Engineer's decisions and the district court's review. *See, e.g.*, Nev. Rev. Stat. § 533.370; *see also* Greg Walch, *Water Law: 9 Treading Water Law—A Nevada Water Rights Primer*, 6 Nev. Law. 18, 18 (Nov. 1998) (discussing the history of prior appropriation and its codification in Nevada). Next, in 1991, the Paiute Tribe and the United States sought recognition of the Tribe's right to a certain additional amount of water from the Walker River, under a principle that Native American tribes have superior water rights based on their relationship to the federal government . . . .

---

the source free from the claims of others with earlier appropriations.'" *Mineral County*, 473 P.3d at 423 (alterations in original) (quoting *Desert Irrigation, Ltd. v. State*, 944 P.2d 835, 837 n.1 (Nev. 1997) (per curiam)).

## C. Mineral County's Intervention

In 1994, Mineral County moved to intervene in the Decree litigation. The district court granted the motion in 2013. The amended complaint in intervention alleges that "[a]ctivities and businesses attributable to the presence and use of Walker Lake represent[ ] approximately 50% of the economy of Mineral County." The complaint asks the Decree court, "pursuant to its continuing jurisdiction under . . . the . . . Decree, [to] reopen and modify the final Decree to recognize the rights of Mineral County . . . and the public to have minimum levels [of water] to maintain the viability of Walker Lake." Mineral County seeks recognition "that a minimum of 127,000 acre/feet [of water] per year to Walker Lake is . . . required under the doctrine of maintenance of the public trust."[2]

The Working Group—already a party to this litigation as a right-holder under the Decree—supports Mineral County's position.

---

[2] The Nevada Supreme Court expressly adopted the public trust doctrine in *Lawrence v. Clark County*, 254 P.3d 606, 607 (Nev. 2011) (en banc). "The public trust doctrine establishes that the state holds its navigable waterways and lands thereunder in trust for the public." *Mineral County*, 473 P.3d at 423. In *Mineral County*, the Nevada Supreme Court clarified that the "doctrine applies to rights already adjudicated and settled under the doctrine of prior appropriation" and "to all waters within the state, whether navigable or nonnavigable." *Id.* at 425 (emphasis omitted).

Because of the posture of this case, the Working Group is considered a defendant as to Mineral County's intervention. But the Working Group "always has supported efforts to transfer water rights for use in Walker Lake . . . and has supported the enforcement of the public trust doctrine for this same purpose."

In 2015, the district court dismissed the amended complaint in intervention. First, the district court held Mineral County lacked standing to assert its public trust claim. It concluded Mineral County's claim "was based purely on a parens patriae theory" of standing—i.e., that Mineral County did not assert any of its own interests, only those of its citizens—and that a county lacks the ability to sue as parens patriae.

Notwithstanding its conclusion on standing, the district court also addressed the merits of Mineral County's public trust claim. It concluded the public trust doctrine may factor into *future* allocations of water, but that using the doctrine to reallocate rights already adjudicated under the Decree would constitute a taking and require just compensation. Invoking the political question doctrine, the court concluded it lacked authority to order Nevada to effectuate such a taking. The district court also held, without analysis, that Walker Lake is not part of the Walker River Basin under the Decree, and therefore that the

> Decree prohibits allocating any water specifically to the lake.

*Mineral County*, 900 F.3d at 1028–30 (9th Cir. 2018) (amended order) (some alterations in original) (footnotes omitted).

## II.  PROCEEDINGS ON APPEAL

The County timely appealed.  We issued a memorandum disposition holding that the County has standing.  *Mono County v. Walker River Irrigation Dist.*, 735 F. App'x 271, 273–74 (9th Cir. 2018).  In a published opinion, we certified two questions to the Nevada Supreme Court:

> [1] Does the public trust doctrine apply to rights already adjudicated and settled under the doctrine of prior appropriation and, if so, to what extent?
>
> [2] If the public trust doctrine applies and allows for reallocation of rights settled under the doctrine of prior appropriation, does the abrogation of such adjudicated or vested rights constitute a "taking" under the Nevada Constitution requiring payment of just compensation?

*Mineral County*, 900 F.3d at 1034.  In a related appeal, we also held that Walker Lake is part of the Walker River Basin.

*United States v. U.S. Bd. of Water Comm'rs*, 893 F.3d 578, 606 (9th Cir. 2018).[3]

The Nevada Supreme Court accepted certification, rephrased the first question to ask whether "the public trust doctrine permit[s] reallocating rights already adjudicated and settled under the doctrine of prior appropriation," and answered the question in the negative. *Mineral County*, 473 P.3d at 421. The court explained that "Nevada's water statutes are consistent with the public trust doctrine" because they "require the State Engineer to consider the public interest in allocating water rights" and satisfy the three-part test described in *Lawrence* for determining whether the alienation of public trust property is valid. *Id.* at 426–27 (emphasis omitted) (citing *Lawrence*, 254 P.3d at 616). Next, the court held that "[t]he state's water statutes recognize the importance of finality in water rights and therefore do not permit reallocation of adjudicated water rights." *Id.* at 429 (emphasis omitted). The court therefore held that "the public trust doctrine does not permit reallocating water rights already adjudicated and settled under the doctrine of prior appropriation." *Id.* at 430. The court explained:

> We recognize the tragic decline of Walker Lake. But while we are sympathetic to the plight of Walker Lake and the resulting negative impacts on the wildlife, resources, and economy in Mineral County, we cannot use the public trust doctrine as a tool to uproot

---

[3] In a separate related appeal, we also reassigned "all aspects of the Walker River Basin water rights case pending in the District of Nevada" to a different district judge. *United States v. Walker River Irrigation Dist.*, 890 F.3d 1161, 1174 (9th Cir. 2018).

> an entire water system, particularly where finality is firmly rooted in our statutes. We cannot read into the statutes any authority to permit reallocation when the Legislature has already declared that adjudicated water rights are final, nor can we substitute our own policy judgments for the Legislature's.

*Id.* (footnote omitted).

## III. STANDARD OF REVIEW

We review de novo a dismissal for failure to state a claim upon which relief can be granted, accepting all factual allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party. *Oki Semiconductor Co. v. Wells Fargo Bank, N.A.*, 298 F.3d 768, 772 (9th Cir. 2002).

## IV. DISCUSSION

To the extent that Mineral County seeks a reallocation of water rights already adjudicated and settled under the doctrine of prior appropriation, the parties agree that the County's claim is foreclosed by the Nevada Supreme Court's decision. Insofar as the County seeks a reallocation of water rights, it appears that "the voluntary sale and purchase of water rights is the only available means to accommodate the needs of current water right holders and to restore Walker Lake under

the Decree." Suppl. Br. of Appellee Nev. Dep't of Wildlife at 4.**[4]**

The County insists, however, that this is not the end of the case. The County identifies two legal theories that it says would not require a reallocation of adjudicated water rights. Because the Nevada Supreme Court did not address, let alone foreclose, these theories, the County maintains that we should vacate the judgment and remand for further proceedings on these two theories. As we shall explain, we agree in part with the County's contentions.

## A.  Challenging the 1936 Decree Itself

First, we reject the County's argument that we should remand for further proceedings on its claim that the 1936 Decree itself violates the public trust doctrine. The County points out, correctly, that the water rights at issue here were adjudicated in 1936, long before the Nevada Supreme Court, in its 2011 *Lawrence* decision, first articulated its three-part test for determining whether the alienation of public trust waters satisfies the public trust doctrine.**[5]** Thus, in the

---

**[4]** Such efforts may have already achieved some success. According to the County, a "substantial portion of the necessary inflows to Walker Lake already is being provided for by the Walker Basin Conservancy's water rights acquisition program, which involves the purchase of Walker River water rights on the open market and transfer of those rights to instream flow use in order to benefit Walker Lake." Suppl. Br. of Appellants Mineral County & Walker Lake Working Grp. at 23.

**[5]** *Lawrence* held that, when "reviewing dispensations of public trust property . . . , courts of this state must consider (1) whether the dispensation was made for a public purpose, (2) whether the state received fair consideration in exchange for the dispensation, and (3) whether the dispensation satisfies 'the state's special obligation to maintain the trust

County's view, no court has ever determined whether the dispensation of state waters under the 1936 Decree comports with the public trust doctrine, and it is an open question "whether adequate consideration of the public trust occurred in the individual allocative decisions of the Walker River Decree." Suppl. Br. of Appellants Mineral County & Walker Lake Working Grp. at 14.  Consequently, the County argues that this "case must be remanded to the district court to determine . . . whether the 1936 Decree, which merely confirmed pre-statutory prior appropriative rights, violated the public trust doctrine by over-allocating the basin and failing to consider the doctrine." *Id.* at 19.

Whatever merit there may be to this novel contention, we are not persuaded that the claim is timely.  In *Mineral County*, the Nevada Supreme Court noted that challenges to a judicial decree adjudicating water rights must be brought within three years:

> As part of Nevada's comprehensive water statutes, which we conclude adhere to the public trust doctrine, the Legislature enacted NRS 533.185 to establish a judicial decree regarding a water right permit.  Regarding those judicial decrees, NRS 533.210(1) provides that:
>
>> The decree entered by the court, as provided by NRS 533.185, *shall be final and shall be conclusive* upon all

---

for the use and enjoyment of present and future generations.'" *Lawrence*, 254 P.3d at 616 (quoting *Arizona Ctr. for Law v. Hassell*, 837 P.2d 158, 170 (Ariz. Ct. App. 1991)).

> persons and rights lawfully embraced
> within the adjudication; but the State
> Engineer or any party or adjudicated
> claimant upon any stream or stream
> system affected by such decree may,
> at any time within 3 years from the
> entry thereof, apply to the court for a
> modification of the decree . . . .

*Mineral County*, 473 P.3d at 429 (emphasis in original) (quoting Nev. Rev. Stat. § 533.210(1)).  The County has not pointed to any statute, rule, or case law authorizing such a challenge more than 80 years after a decree has become final and conclusive.  Because allowing such challenges after so much time has elapsed would plainly undermine the "finality in water rights" that Nevada's water statutes deem important, s*ee id.* at 429–30, the County's failure to act sooner is dispositive.  We therefore hold that the challenge is untimely.

## B. Remedies That Do Not Involve a Reallocation of Water Rights

We agree, however, with the County's second contention—that its public trust claim remains viable because the County can seek remedies that would *not* involve a reallocation of adjudicated water rights.

The County argues that "the public trust doctrine imposes a continuing affirmative duty on the Decree Court to manage the resource for the benefit of future generations using remedies other than a reallocation of water rights, which is not permitted."  Suppl. Br. of Appellants Mineral County & Walker Lake Working Grp. at 6.  Hence, according to the County, this case "must be remanded to the district court to

determine: (1) . . . whether the continuing duty of the Decree Court to maintain Walker Lake's public trust uses and values has been violated since the entry of the Decree; (2) if so, what level of average annual minimum flows must reach the Lake; and finally (3) what the proper remedy ought to be." *Id.* at 19. Proper remedies, the County tells us, could include:

> (1) a change in how surplus waters are managed in wet years and how flows outside of the irrigation season are managed; (2) mandating efficiency improvements with a requirement that water saved thereby be released to Walker Lake; (3) curtailment of the most speculative junior rights on the system; (4) a mandate that the State provide both a plan for fulfilling its public trust duty to Walker Lake and the funding necessary to effectuate that plan; and/or (5) an order requiring water rights holders to come up with a plan to reduce consumptive water use in the Basin as was done by the State Engineer in Diamond Valley.

*Id.* at 15–16 (alterations omitted). The County maintains that achieving sufficient inflows into Walker Lake "without a reallocation of water rights" is a factual issue "for the Decree Court to address on remand." *Id.* at 25.

We are not persuaded by the Walker River Irrigation District's ("Irrigation District") arguments that this issue does not warrant a remand. First, we agree with the County that the Nevada Supreme Court's decision in *Mineral County* does not foreclose the County from seeking remedies under the public trust doctrine that do not require a reallocation of

adjudicated water rights.  To be sure, the Nevada Supreme Court assumed that affording effective relief to the County would require a reallocation of such rights:  "The Basin does not appear able to meet the county's needs without abrogating the rights of more senior right holders.  The county's request would therefore require reallocating water rights."  *Mineral County*, 473 P.3d at 430 n.8.  The court, however, did not consider whether other remedies were viable.  The court, moreover, squarely held that "[t]he public trust doctrine applies to rights already adjudicated and settled under the doctrine of prior appropriation."  *Id.* at 425.  Although the court noted that the public trust doctrine "*generally* acts as a restraint on the state in alienating public trust resources," *id.* at 423 (emphasis added), the court did not hold, as the Irrigation District suggests, that the doctrine acts *only* "as a restraint on alienation of a public resource."  Suppl. Br. of Appellee Walker River Irrigation Dist. at 13.

Second, we are not persuaded by the Irrigation District's argument that the County's argument is a new one and that, "[a]fter over 25 years, Mineral County should not be allowed to change its position."  *Id.* at 12.  Although Mineral County's motion to intervene, filed in 1994, was granted in 2013, the litigation remains at an early stage.  The district court dismissed the County's amended complaint in intervention at the pleading stage, under Rule 12, and the case has since been on appeal.  Furthermore, the County's complaint is broad enough to encompass the remedies it now seeks, and, even if that were not the case, "[t]he liberal policies reflected in Rules 15(a) and 15(b) permit the demand to be amended either before or during trial."  5 Arthur R. Miller et al., Federal Practice and Procedure § 1255 (3d ed. 2020).  Under Rule 54(c), moreover, "the district court may grant any relief to which the evidence shows a party is entitled, even though

that party has failed to request the appropriate remedy or remedies in his pleading." *Id.*

Third, we decline to address for the first time on appeal the Irrigation District's arguments that the County's proposed remedies "are either unnecessary, or clearly beyond the power of the district court." Suppl. Br. of Appellee Walker River Irrigation Dist. at 14. To be sure, some of the arguments the Irrigation District raises may have merit. The Irrigation District plausibly argues, for example, that "[c]urtailment of the 'most speculative junior rights' on the system for the benefit of Walker Lake clearly would be a direct reallocation of those junior water rights"—action that the Nevada Supreme Court's decision forecloses. *Id.* at 15. But these arguments have not been developed, passed on by the district court, or briefed on appeal. We therefore leave them for the district court to address, in the first instance, on remand.

## V. CONCLUSION

The district court properly dismissed Mineral County's public trust claim to the extent it seeks a reallocation of water rights adjudicated under the Decree and settled under the doctrine of prior appropriation. The County, however, may pursue its public trust claim to the extent that the County seeks remedies that would *not* involve a reallocation of such rights. The judgment of the district court, therefore, is affirmed in part and vacated in part, and the case is remanded for proceedings consistent with this opinion.

Each party shall bear its own costs on appeal.

**AFFIRMED in part; VACATED in part; and REMANDED.**